# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **BOBBY J. BEGLEY,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00027 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By: Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

## I. Background and Standard of Review

Plaintiff, Bobby J. Begley, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Begley filed a prior SSI application, which was denied by decision dated December 4, 2001.[2] (Record, ("R."), at 36-45.) He filed his current application for SSI on or about December 30, 2002, alleging disability as of December 5, 2001,[3] based on muscle cramps, liver problems, seizures, bleeding of the stomach, hypertension, dizziness, lightheadedness and "nerves." (R. at 74-75, 82, 118.) The claim was denied initially and upon reconsideration. (R. at 52-54, 58, 59-61.) Begley then requested a hearing before an administrative law judge, ("ALJ"). (R. at 62.) The ALJ held a hearing on July 7, 2004, at which Begley was represented by counsel. (R. at 434-80.)

By decision dated August 18, 2004, the ALJ denied Begley's claim. (R. at 16-28.) The ALJ found that Begley had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 27.) The ALJ also found that the medical

---

[2]There is no indication in the record that Begley pursued this claim any further.

[3]At his hearing, Begley amended his onset date from July 1, 2000, to December 5, 2001, the day following the ALJ's prior unfavorable SSI determination. (R. at 74, 436.)

evidence established that Begley suffered from severe impairments, namely alcohol dependence, a questionable seizure disorder, back and ankle pain and borderline intellectual functioning. (R. at 27.) While the ALJ found that Begley's alcohol abuse met 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.09, the medical listing for substance addiction disorders, he found that, absent alcohol abuse, Begley's only severe impairments were a questionable seizure disorder and back and ankle pain.[4] (R. at 22.) The ALJ found that Begley's allegations were not totally credible. (R. at 27.) The ALJ found that Begley had the residual functional capacity to perform light work[5] that did not require more than four hours of standing in an eight-hour workday, driving, working at unprotected heights, working around hazardous material or work that might result in a cut of the skin. (R. at 27.) The ALJ found that Begley was unable to perform any of his past relevant work. (R. at 27.) Based on Begley's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Begley could perform jobs existing in significant numbers in the national economy, including those of a production machine tender, an entry interviewer, an assembler, a hand packer, a nonconstruction laborer and a houseman. (R. at 27.) Thus, the ALJ found that Begley was not disabled under the Act and was not eligible for benefits. (R. at 27-28.) *See* 20 C.F.R. § 416.920(g) (2007).

---

[4]In the "Findings" portion of the ALJ's decision, he stated that none of Begley's severe impairments met or equaled a listed impairment. (R. at 27.) However, this appears to be nothing more than a typographical error, as the ALJ clearly explained otherwise in the body of his decision. (R. at 22.)

[5] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2007).

After the ALJ issued his decision, Begley pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 8-11.) Begley then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2007). The case is before this court on Begley's motion for summary judgment filed August 29, 2006, and the Commissioner's motion for summary judgment filed October 2, 2006.

## II. Facts

Begley was born in 1967, (R. at 74), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c) (2007). Begley has a seventh-grade education[6] and past relevant work experience as a construction worker and a shuttle car operator in the coal mines. (R. at 83, 88, 91, 109, 114.)

Begley testified that he had a problem with alcoholism in the past, namely beer, but that he had not drunk beer since being hospitalized in June 2003. (R. at 445.) Margaret Robbins, a psychological expert, also was present and testified at Begley's hearing. (R. at 455-58, 463-79.) Robbins testified that it appeared that Begley's IQ was compromised when he drank, but it was unclear to her how much it improved when he was sober. (R. at 457.) Specifically, Robbins noted that it was unclear whether alcohol affected his performance during the consultative evaluation performed by Lanthorn and Fuchs on November 18, 2003, because there was no objective evidence, such as a urine screen, for her to determine whether Begley had

---

[6]Although Begley noted on his Disability Report that he had completed the eighth grade, the evidence presented at his hearing showed that he failed the eighth grade twice before quitting school during his third attempt at his eighth grade year. (R. at 88, 114, 473.)

-4-

been drinking. (R. at 456.) She noted that Begley exhibited some slurred speech during that examination, but that his cousin who accompanied him to the examination stated that was not unusual for Begley. (R. at 456.) Robbins further testified that the mental residual functional capacity assessment completed by Dr. Williams on December 9, 2003, was completed by a primary care physician who commented only on Begley's physical problems. (R. at 457.) Robbins stated that a urine screen in conjunction with a mental evaluation could shed some light on Begley's mental functioning, but she further noted that due to Begley's past alcoholism, there was the possibility of some organic deficits. (R. at 458.) Robbins testified that there was no mention of the smell of alcohol from any of the mental health examiners.[7] (R. at 463.) For all of these reasons, Robbins testified that she could not offer a diagnosis. (R. at 467.)

Robert Spangler, a vocational expert, also testified at Begley's hearing. (R. at 459-61, 472-74, 476-78.) Spangler testified that an individual with a limited education[8] who could perform the full range of light work could perform the jobs of an entrance interviewer, a library clerk helper, a janitor, a houseman, a factory messenger, a production machine tender, an assembler, a hand packer, a production inspector, a grader/sorter and a nonconstruction laborer. (R. at 460.) Spangler testified that if Begley was merely socially promoted from the sixth to seventh grade,

---

[7]I note that, on July 21, 2004, only two weeks after the hearing, Dr. Miller noted the smell of alcohol on Begley, and opined that he was continuing to use alcohol. (R. at 407-08.)

[8]Pursuant to 20 C.F.R. § 416.964(b)(3), a limited education means the individual has "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." An individual with formal education at a seventh grade through eleventh grade level generally is considered to have a limited education. *See* 20 C.F.R. § 416.964(b)(3) (2007).

-5-

resulting in a finding that Begley had a marginal education,[9] then the job base would be reduced dramatically. (R. at 476.) Nonetheless, Spangler testified that such an individual could perform jobs existing in significant numbers in the national economy, including those of a houseman, a janitor, a hand packer, a nonconstruction laborer and a production machine tender. (R. at 478.) Despite not having Begley's school records from the sixth and seventh grades, Spangler opined that the probability that Begley had a marginal versus a limited education was rather high, given his poor performance during each year he attempted to pass the eighth grade. (R. at 477.)

In rendering his decision, the ALJ reviewed medical records from Dr. R. Michael Moore, M.D.; Dr. Abe M. Jacobson, M.D.; Norton Community Hospital; Southwestern Virginia Mental Health Institute; Stone Mountain Health Services; St. Mary's Hospital; Julie Jennings, Ph.D., a state agency psychologist; Wellmont Lonesome Pine Hospital; Southwest Virginia Regional Cancer Center; Dr. Gary S. Williams, M.D.; Wise County Behavioral Health Services; Dr. Donald R. Williams, M.D., a state agency physician; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Jorge F. Fuchs, M.A., a senior psychological examiner; R.J. Milan Jr., Ph.D., a state agency psychologist; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Arthur Amador, M.D.; and Virginia Public Schools. Begley's attorney submitted additional medical records from Southwest Virginia Regional Cancer

---

[9]Pursuant to 20 C.F.R. § 416.964(b)(2), a marginal education means the individual has "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." An individual with formal schooling at a sixth grade level or less generally is considered to have a marginal education. *See* 20 C.F.R. § 416.964(b)(2) (2007).

Center and Dr. Gary Williams to the Appeals Council.[10]

The first mention of any mental impairment contained in the record was on November 5, 1997, when Begley saw Dr. Abe M. Jacobson, M.D., who completed a Report of Contact. (R. at 147.) Although Begley complained of "nerve problems," Dr. Jacobson noted no prior complaints or treatment for "nerves," anxiety or depression. (R. at 147.) On March 8, 2002, Begley presented to the emergency department at Norton Community Hospital after hitting his head. (R. at 148.) He stated that he had drunk four to five beers that day. (R. at 148.) It was noted that Begley smelled of alcohol. (R. at 151.) He was diagnosed with alcohol abuse, among other things. (R. at 152.) On June 9, 2002, Begley was admitted to Norton Community Hospital after presenting with a two-day history of abdominal/chest pain. (R. at 153.) He admitted to drinking a 12-pack of beer daily. (R. at 153.) Begley was encouraged to attend detoxification, but he stated that he was not interested. (R. at 153.) Lab work showed an alcohol level greater than 300 and a low platelet level. (R. at 154.) He developed delirium tremens. (R. at 155.) Begley was treated with Ativan, Dilantin and Haldol. (R. at 155.) It was noted that Begley had drunk alcohol on a regular basis for approximately 16 years. (R. at 161.) He was discharged against medical advice on June 12, 2002. (R. at 155.) The following day, he was returned to Norton Community Hospital by the Wise County Sheriff's Department for medical clearance. (R. at 162.)

_____

[10]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 8-11), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Case 2:06-cv-00027-JPJ-PMS   Document 17   Filed 07/24/07   Page 7 of 27   Pageid#: 70

Begley was admitted to Southwestern Virginia Mental Health Institute on June 13, 2002, for detoxification pursuant to a temporary detention order with recent problems of recurrent alcohol dependence and intoxicated behavior. (R. at 164-78.) He denied specific symptoms of overt depression. (R. at 169.) He denied suicidal ideation or intention. (R. at 169.) Other than a detox admission at The Laurels approximately one year earlier, Begley denied other psychiatric hospitalizations. (R. at 169.) A physical examination revealed tremulousness and some visual "illusions." (R. at 170.) He stated that his alcohol abuse dated back to his teenage years, further noting that during the prior ten years, his longest period of sobriety was only a couple of months. (R. at 170.) Begley reported drinking 12 to 24 beers daily. (R. at 170.) A history of delirium tremens, alcohol-related liver disease and episodic blackouts was noted. (R. at 170.) Begley's affect was somewhat flattened. (R. at 171.) He noted intermittent visual hallucinatory experiences off and on both recently and in the past. (R. at 171.) His thought processes were generally concrete and goal-directed. (R. at 171.) Begley was fully oriented, and his attention/concentration and memory were intact. (R. at 171.) He was deemed to be of average intelligence. (R. at 171.) Dr. M. Anthony Graham, M.D., diagnosed alcohol dependence, alcohol withdrawal and a then-current Global Assessment of Functioning, ("GAF"), score of 35,[11] among other things. (R. at 172.) Begley was treated for alcohol withdrawal. (R. at 172.) It was noted that Begley's mental state "improved significantly" with detoxification. (R.

_____

[11]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood...." DSM-IV at 32.

-8-

at 167.)  He was not agreeable to inpatient residential alcohol rehabilitation.  (R. at 167.)  Begley was discharged on June 18, 2002, with diagnoses of alcohol dependence, personality disorder, not otherwise specified, and a then-current GAF score of 55.[12]  (R. at 167.) Upon discharge, Begley's mood was euthymic.  (R. at 167.) Dr. Graham recommended that Begley continue outpatient alcohol dependence treatment with monitoring, as well as participation in Alcoholics Anonymous meetings and ongoing counseling for maintaining sobriety.  (R. at 168.)

Begley was admitted to Wise County Behavioral Health Services for treatment of chemical dependency on June 25, 2002.  (R. at 310.)  At intake, Begley complained of anxiety, antisocial behavior and cognitive impairment in the form of distractibility and memory impairment.  (R. at 310.)  Begley was diagnosed with alcohol dependence.  (R. at 310.)

On July 5, 2002, Begley was seen at Stone Mountain Health Services, at which time it was noted that he continued to drink.  (R. at 180.)  He was diagnosed with alcohol abuse, among other things, and was advised to follow up with mental health treatment.  (R. at 180.)  On August 28, 2002, Begley presented to the emergency department at St. Mary's Hospital with complaints of fatigue.  (R. at 183.)  He was diagnosed with alcohol intoxication/abuse.  (R. at 183.)

On March 20, 2003, Julie Jennings, Ph.D., a state agency psychologist, completed a mental assessment, indicating that Begley was moderately limited in his

---

[12]A GAF of 51-60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to set realistic goals or make plans independently of others . (R. at 192-95.) She found no evidence of limitation in Begley's ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. at 193.) In all other categories of mental functioning, Jennings found that Begley was not significantly limited. (R. at 192-93.) She noted that Begley had a significant substance abuse disorder that would limit him to simple, unskilled, nonstressful work. (R. at 194.) Jennings noted that Begley's symptoms were only partially credible. (R. at 194.)

Jennings also completed a Psychiatric Review Technique form, ("PRTF"), finding that Begley suffered from a personality disorder and a substance addiction disorder, and that a residual functional capacity assessment was necessary. (R. at 196-211.) She found that Begley was moderately restricted in his activities of daily living, experienced moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace and had experienced one or two episodes of decompensation. (R. at 208.)

On June 14, 2003, when Begley was admitted to Wellmont Lonesome Pine Hospital with complaints of chills, nausea and vomiting, burning with urination and

-10-

difficulty urinating, he reported drinking six beers daily. (R. at 214-17.) He was diagnosed with alcoholism, among other things. (R. at 216.) Begley's girlfriend reported that Begley had not been drinking much beer for the previous few days. (R. at 212.) Begley was given Ativan to lessen the effects of alcohol withdrawal. (R. at 266.) He was discharged on June 17, 2003. (R. at 212-13.) It was noted that Begley had a history of alcohol abuse, cirrhosis, thrombocytopenia and anemia. (R. at 213.)

On June 26, 2003, Begley's girlfriend reported that he had not had more than two beers over the previous seven weeks and none since being discharged from Lonesome Pine Hospital. (R. at 278-79.) It was noted that Begley was alert and fully oriented and his mood was positive. (R. at 280.) On July 2, 2003, Begley noted that he had not had any alcohol for the previous 20 days. (R. at 307, 391.) On August 1, 2003, Eric T. Greene, an LPC at Wise County Behavioral Health Services, noted that Begley was continuing to receive outpatient substance abuse counseling. (R. at 310.) His diagnoses on that date were alcohol dependence, nicotine dependence and personality disorder, not otherwise specified. (R. at 310.) Greene assessed Begley's GAF score at 49,[13] with this being the highest score over the previous six months and 42 being the lowest score. (R. at 310.) On August 26, 2003, Begley's girlfriend reported that he was not drinking and was coping fairly well. (R. at 390.) Dr. Williams noted that his chronic thrombocytopenia had resolved with absence of drinking. (R. at 390.) On September 26, 2003, Greene noted that Begley had remained in treatment and had been generally compliant with attendance. (R. at 309.) His diagnoses remained unchanged. (R. at 309.) On October 15, 2003, Dr. David P.

---

[13]A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

Miller, M.D., noted that Begley "apparently [was] not drinking." (R. at 375.)

On November 18, 2003, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, and Jorge F. Fuchs, M.A., a senior psychological examiner, completed a psychological evaluation of Begley. (R. at 319-26.) They noted that Begley's speech initially appeared somewhat slurred, but when asked if he had been drinking, he adamantly denied it. (R. at 319.) Begley's cousin, who accompanied him to the evaluation, corroborated Begley's statement that his speech always had been slurred. (R. at 319.) Begley reported that he began drinking alcohol when he was approximately 16 or 17 years old, but that he had stopped approximately one month prior to the evaluation. (R. at 320.) The examiners noted that Begley was fully oriented and that his affect was a bit casual. (R. at 321.) He displayed no evidence of any psychotic process or delusional thinking. (R. at 322.) Begley reported occasional depression, but did not place much emphasis on it. (R. at 322.) He complained primarily of memory difficulties. (R. at 322.) He denied suicidal ideations. (R. at 322.) Begley's cousin stated that most of Begley's friends were alcoholics, so he tried to stay away from them. (R. at 322.) The examiners noted that Begley could relate to and communicate with others when he was not abusing alcohol. (R. at 322.)

Lanthorn and Fuchs administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test, on which Begley achieved a verbal IQ score of 69, a performance IQ score of 72 and a full-scale IQ score of 67, which placed him in the extremely low range of intellectual functioning. (R. at 323.) However, they opined that these scores were "clearly an under representation of [Begley's] true intellectual

-12-

functioning level," which they estimated to be in the upper limits of the borderline range to the lower limits of the low average range. (R. at 323.) The examiners described Begley's effort as "barely marginal." (R. at 323.) They also administered the Wechsler Memory Scale-Third Edition, ("WMS-III"), which indicated that Begley performed within the extremely low range in the areas measuring the ability to learn materials when verbally presented. (R. at 324.) They opined that some attentional difficulties also might be suggested. (R. at 324.) Testing indicated that Begley's memory for day-to-day tasks, as well as more complex attentional tasks, fell within the borderline range. (R. at 325.)

Lanthorn and Fuchs concluded that Begley was only mildly limited in his abilities to understand and remember, noting that he would be able to remember locations and work-like procedures and could understand simple instructions. (R. at 325.) Begley's ability to sustain concentration and persistence was considered fair. (R. at 325.) He appeared capable of making work-related decisions when sober and when not affected by characterological difficulties. (R. at 325.) The examiners further noted that Begley's social interactions might be somewhat limited, but that these limitations were due to characterological problems as well as a history of substance abuse. (R. at 325.) They noted no significant adaptation limitations. (R. at 325.) Although Lanthorn and Fuchs opined that Begley's characterological and substance abuse difficulties might impact his abilities to make plans, they concluded that he knew how to behave appropriately in the work setting. (R. at 325.) The examiners diagnosed Begley with alcohol dependence, alcohol-induced persisting amnestic disorder, personality disorder, not otherwise specified, and a then-current GAF score of 55. (R. at 325.) They recommended that Begley continue with

-13-

outpatient treatment for alcohol abuse, and they highly recommended monitoring of his behavior patterns. (R. at 326.) They opined that Begley's memory difficulties were due to the effects of a longstanding substance abuse pattern. (R. at 326.)

On December 2, 2003, Begley's girlfriend reported that he was not drinking alcohol. (R. at 389.) Later that month, on December 9, 2003, Dr. Gary Williams completed a mental assessment, indicating that Begley had a good ability to maintain personal appearance and to behave in an emotionally stable manner, a fair ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses and to demonstrate reliability and a poor or no ability to function independently, to maintain attention and concentration, to understand, remember and carry out complex, detailed and simple job instructions and to relate predictably in social situations. (R. at 327-29.) Dr. Williams listed only physical impairments to support these findings. (R. at 327-29.)

On December 11, 2003, R.J. Milan Jr., Ph.D., a state agency psychologist, completed a mental residual functional capacity assessment, finding that Begley was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to interact appropriately with the public. (R. at 330-32.) Milan found no evidence of limitation in the ability to make simple work-related decisions, and he found that Begley was not

-14-

significantly limited in the remainder of mental activities.  (R. at 330-31.)

Milan also completed a PRTF, indicating that Begley suffered from an organic mental disorder, a personality disorder and a substance addiction disorder.  (R. at 333-49.)  Milan opined that a residual functional capacity assessment was necessary.  (R. at 333.)  He found that Begley was mildly restricted in his activities of daily living, experienced moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace and had experienced one or two episodes of decompensation.  (R. at 343.)

On January 19, 2004, Begley underwent a psychiatric evaluation by Dr. Arthur Amador, M.D., at the request of counsel.  (R. at 358-60.)  Begley reported memory difficulty, and Dr. Amador noted that it was "[a]pparent that he [was] low in intelligence."  (R. at 358.)  He denied feeling sad, tearful or anxious.  (R. at 358.)  He reported that he did not like to be around people.  (R. at 358.)  Begley reported visual hallucinations, but denied panic attack symptoms.  (R. at 358.)  He reported that he is uncomfortable around people.  (R. at 359.)  Dr. Amador noted that Begley's attention span and concentration were poor.  (R. at 359.)  His affect was deemed inappropriate, and his mood was neutral.  (R. at 359.)  Begley's thought processes were relevant and coherent.  (R. at 359.)  Dr. Amador noted that Begley's immediate memory was intact, but that his recent past and remote past memories were mildly impaired.  (R. at 359.)  His judgment was deemed poor, his insight fair and his intelligence was estimated at below average.  (R. at 359.)  Dr. Amador diagnosed Begley with adjustment disorder, unspecified, mild mental retardation and a then-current GAF score of 55 to 60.  (R. at 360.)

-15-

Dr. Amador also completed a mental assessment, indicating that Begley had a fair ability to follow work rules, to interact with supervisors, to deal with work stresses, to understand, remember and carry out complex, detailed and simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 361-62.) In all other areas of mental functioning, Dr. Amador found that Begley had a poor or no ability. (R. at 361-62.)

On January 30, 2004, Begley claimed not to be using alcohol. (R. at 373.) He was described as somewhat anxious. (R. at 373.) On February 17, 2004, Dr. Williams diagnosed chronic anxiety and prescribed Lexapro. (R. at 387, 425.) Begley reported that he was not drinking. (R. at 387, 425.) On July 21, 2004, Begley again denied the use of alcohol. (R. at 407.) However, Dr. David P. Miller, M.D., noted the odor of alcohol on his breath and noted that he suspected continued alcohol use. (R. at 407-08.) On July 30, 2004, Begley again denied drinking. (R. at 426.) He was diagnosed with depression. (R. at 426.) On November 4, 2004, Begley again denied drinking, which was confirmed by his girlfriend. (R. at 427.) He was continued on Lexapro. (R. at 427.)

On January 18, 2005, Begley reported that he was not drinking, and his girlfriend confirmed this. (R. at 424, 429.) On March 10, 2005, Dr. Michael W. Wheatley, M.D., noted that Begley's depression was "doing quite well today." (R. at 423.) He was continued on Lexapro. (R. at 423.) On April 13, 2005, Begley again denied drinking alcohol. (R. at 396.) He was alert and fully oriented, and his affect was described as calm. (R. at 396.) On June 14, 2005, Begley saw Dr. Williams with complaints of neck and back pain. (R. at 422.) He expressed no other concerns. (R.

-16-

at 422.)  On October 19, 2005, Begley was alert and fully oriented with a calm affect. (R. at 395.)

On November 8, 2005, Dr. Williams completed a mental assessment, finding that Begley had a fair ability to follow work rules, to relate to co-workers to interact with supervisors, to understand, remember and carry out simple job instructions and to behave in an emotionally stable manner.[14]  (R. at 432-33.)  He found that Begley had a poor or no ability to deal with the public, to use judgment, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed and complex job instructions and to relate predictably in social situations.  (R. at 433.)

### III.  Analysis

The Commissioner uses a five-step process in evaluating SSI claims.  *See* 20 C.F.R. § 416.920 (2007).  *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981).  This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work.  *See* 20 C.F.R. § 416.920 (2007).  If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

---

[14]Dr. Williams indicated that Begley had both a good and a fair ability to maintain personal appearance.  (R. at 433.)  He did not indicate Begley's ability with regard to demonstrating reliability.  (R. at 433.)  It appears that Dr. Williams simply checked the wrong line for one of these areas of mental functioning, but it is impossible to ascertain which one.

-17-

does not proceed to the next step.  *See* 20 C.F.R. § 416.920(a) (2007).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy.  *See* 42 U.S.C.A. §1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated August 18, 2004, the ALJ denied Begley's claim.  (R. at 16-28.)  The ALJ found that the medical evidence established that Begley suffered from severe impairments, namely alcohol dependence, a questionable seizure disorder, back and ankle pain and borderline intellectual functioning.  (R. at 27.)  While the ALJ found that Begley's alcohol abuse met 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.09, the medical listing for substance addiction disorders, he found that, absent alcohol abuse, Begley's only severe impairments were a questionable seizure disorder and back and ankle pain.  (R. at 22.) The ALJ found that Begley had the residual functional capacity to perform light work that did not require more than four hours of standing in an eight-hour workday, driving, working at unprotected heights, working around hazardous material or work that might result in a cut of the skin.  (R. at 27.) The ALJ found that Begley was unable to perform any of his past relevant work.  (R. at 27.)  Based on Begley's age, education, work history and residual functional

-18-

capacity and the testimony of a vocational expert, the ALJ found that Begley could perform jobs existing in significant numbers in the national economy. (R. at 27.) Thus, the ALJ found that Begley was not disabled under the Act and was not eligible for benefits. (R. at 27-28.)  *See* 20 C.F.R. § 416.920(g) (2007).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence.  *See Hays*, 907 F.2d at 1456.  In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence.  *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein.  *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

-19-

Begley argues that the ALJ erred in failing to find that he suffered from a severe mental impairment, absent his alcohol abuse. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 13-22.) Specifically, Begley argues that, despite the ALJ's finding in a prior decision that he suffered from borderline intellectual functioning absent alcoholism, a severe impairment, the ALJ failed to find that he suffered from this severe impairment, absent any alcohol abuse, in his current decision. (Plaintiff's Brief at 13-15.) Begley further argues that, in any event, the evidence before the court demonstrates that he suffers from a severe mental impairment, absent alcohol abuse. (Plaintiff's Brief at 15-22.)

I first will address Begley's procedural argument, that the ALJ should have found that he suffered from a severe mental impairment, namely borderline intellectual functioning, absent alcohol abuse, since he found that he did so in the prior decision. Begley bases this argument on Acquiescence Ruling 00-1(4).[15] Specifically, Begley argues that the ALJ did not explain the inconsistency between his finding in the decision currently before the court that Begley did not suffer from a severe mental impairment absent alcohol abuse and his prior finding that Begley did suffer from a severe mental impairment absent alcohol abuse. In the ALJ's prior decision, the ALJ stated as follows: "... absent alcohol abuse, the claimant's only severe impairments are borderline intellect and a questionable seizure disorder." (R. at 42.) At another point,

_____

[15]Acquiescence Ruling 00-1(4) states as follows: When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances.

-20-

however, the ALJ's opinion stated, "[i]n summary, the undersigned concludes the claimant experiences severe alcohol abuse, a questionable seizure disorder, and borderline intellect, which impairments in combination are severe." (R. at 42.) The ALJ proceeded to state that "due to the claimant's ... borderline intellect, he is unable to perform work involving highly skilled or complex tasks . ..." (R. at 42.) In the previous decision, with this limitation to the performance of simple, unskilled work, the vocational expert testified that Begley could perform jobs existing in significant numbers in the national economy, including those of a cleaner, a vehicle washer, a hand packer, a nonconstruction laborer, a nursery worker and a sorter, all at the medium[16] level of exertion. (R. at 42.)

I first note, as did the Commissioner in his brief, that the only restriction the ALJ placed on Begley's mental residual functional capacity previously was the inability to perform highly skilled or complex tasks. However, a review of the ALJ's opinion does not reveal whether this restriction was placed on Begley as a result of a borderline intellect, absent alcohol abuse, or as a result of a borderline intellect in combination with alcohol abuse. That being the case, I cannot find that there is an inconsistency between the two opinions.

Moreover, at Begley's most recent hearing, the vocational expert testified that an individual with a marginal education, who, as explained earlier, could perform

---

[16]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, he also can perform light and sedentary work. *See* 20 C.F.R. § 416.967(c) (2007).

simple, unskilled jobs, would be able to perform jobs existing in significant numbers in the national economy, including those of a houseman, a janitor, a hand packer, a nonconstruction laborer and a production machine tender, all at the light level of exertion. (R. at 478.) Thus, the same limitation as was posed to the vocational expert at the prior hearing was posed to the vocational expert at Begley's most recent hearing, and the vocational expert opined that jobs were available that such an individual could perform. (R. at 478.) Remand to the ALJ is not warranted when there is no question that he will reach the same result. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994). I find, for the reasons just discussed, that is the case here.

I next will address Begley's substantive argument, that the ALJ erred by failing to find that he suffered from a severe mental impairment, namely borderline intellect, apart from his alcohol abuse. (Plaintiff's Brief at 15-22.) For the following reasons, I disagree.

In 1996, Congress amended the Social Security Act to provide that "an individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(c) (West 2006). These amendments specified that they were to "apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security ... on or after the date of the enactment of this Act." Pub. L. No. 104-121, § 105(a)(5)(A) (amending 42 U.S.C. § 405 notes, pertaining to DIB), 110 Stat. 847, 853-54. Moreover, 20 C.F.R. § 416.935(a) states as follows: "If

we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."

Thus, under the Commissioner's regulations, an ALJ must first conduct the five-step disability inquiry without considering the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits, and there would be no need to proceed with the analysis under 20 C.F.R. § 416.935. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ should proceed under § 416.935 to determine whether the claimant "would still [be found] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 416.935 (2007); *see Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir. 2001). In other words, if, and only if, an ALJ finds a claimant disabled under the five-step disability inquiry, should the ALJ evaluate whether the claimant still would be disabled if he or she stopped using drugs or alcohol. *See Bustamante*, 262 F.3d at 955.

While the record clearly shows that Begley suffered from various impairments, both physical and mental, as a result of his long history of alcoholism, what is not clear is whether Begley stopped consuming alcohol, if so, when he stopped consuming alcohol, and also, if so, what effect this cessation had on his mental functioning. In other words, I find that it is not possible based on the record before the court to determine whether, absent his alcoholism, Begley suffered from a disabling mental

-23-

impairment.

Although Begley repeatedly alleges that he stopped consuming alcohol after being hospitalized in June 2003, (R. at 278-79, 307, 390-91), he advised Lanthorn and Fuchs in November 2003 that he had stopped consuming alcohol only the month before. (R. at 320.) Moreover, at the same evaluation in November 2003, Lanthorn and Fuchs noted that Begley's speech was slurred. (R. at 319.) Begley adamantly denied having consumed alcohol, and his cousin, who accompanied him to the evaluation, stated that his speech always had been slurred. (R. at 319.) However, there is no other mention in the record from any medical source that Begley had slurred speech. Moreover, in July 2004, although Begley denied consuming alcohol, Dr. Miller noted the odor of alcohol on Begley's person. (R. at 407.)

There simply is not sufficient evidence before the court to determine if and when Begley stopped consuming alcohol. Subjective allegations simply are not sufficient, and, aside from that, there is evidence contained in the record, as outlined above, to contradict Begley's subjective allegations. Further, I note that there is absolutely no objective evidence to substantiate Begley's claims of sobriety. For instance, despite Begley's longstanding history of alcoholism, and despite concerns that he continued to consume alcohol, no urine screens are contained in the record to definitively show whether he was drinking at any given time. Robbins, the psychological expert, stated that it would have been helpful for Begley to have undergone a urine screen in conjunction with a mental evaluation so that it could have been determined that the results of the evaluation were not influenced by alcohol use.

(R. at 466-67.) However, because no such evidence was contained in the record, she concluded that she could not render a mental diagnosis for Begley because his alcoholism could not be separated from his mental impairments. (R. at 467.)

For all of the reasons stated above, I find that substantial evidence supports the ALJ's finding that Begley did not suffer from a severe mental impairment, absent his alcohol abuse, and I recommend that the court deny his motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.    Remand is not warranted to address the alleged inconsistent finding regarding Begley's mental impairment between the previous ALJ's decision and the current ALJ's decision;

2.    Substantial evidence exists to support the ALJ's finding that Begley did not suffer from a disabling mental impairment, absent alcohol abuse; and

3.    Substantial evidence exists to support the ALJ's finding that Begley was not disabled under the Act.

-25-

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Begley's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    This 24th day of July 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE